# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSH THOMAS, | ) 1:05-CV-0955 AWI LJO HC |
| Petitioner, | ) FINDINGS AND RECOMMENDATION |
| | ) REGARDING PETITION FOR WRIT OF |
| v. | ) HABEAS CORPUS |
| CALIFORNIA BOARD OF PRISON TERMS, et al, | ) [Doc. #1] |
| Respondents. | ) |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This action has been referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72-302.

**BACKGROUND**[1]

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Fresno, following his conviction by jury trial on August 5, 1982, of second degree murder in violation of Cal. Penal Code § 187 and use of a weapon during the commission of the offense in violation of Cal. Penal Code § 12022.5. Petitioner

---

[1] This information is derived from the petition for writ of habeas corpus.

1  was sentenced to serve an indeterminate prison term of seventeen years to life.

2      On an unstated dated, a parole suitability hearing was held by the California Board of Prison
3  Terms ("BPT"). At the conclusion of the hearing, the BPT denied parole.

4      On July 26, 2005, Petitioner filed the instant petition for writ of habeas corpus in this Court.
5  The petition challenges the decision of the California Board of Prison Terms to deny parole.

## DISCUSSION

I.  Standard of Review

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004); Sass v. California Board of Prison Terms, 376 F.Supp.2d 975, 978 (E.D. Cal.2005); see 28 U.S.C. § 2254(a) (This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly

established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003). However, where, as here, the state courts have not addressed the constitutional issue in dispute in a reasoned opinion, the federal court will independently review the record in adjudication of that issue. Delgado v. Lewis, 223 F.3d 976, 981

(9th Cir.2000). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.2003).

II.  Subject Matter Jurisdiction

Petitioner contends that his constitutional rights were violated, and he was deprived of liberty without due process of law, when the BPT failed to set a parole release date at his parole hearing. Petitioner contends that the language of the California parole statutes creates a presumptive entitlement to, and thus has a liberty interest in, the setting of a parole release date. Because Petitioner is challenging the actions of a state, the Court will proceed under the Fourteenth Amendment.

The Fourteenth Amendment provides that "[no] State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1.  In certain cases, a state law may create a liberty interest protected by the Constitution. In examining questions of procedural due process, federal courts employ a two-step inquiry: 1) whether there exists a liberty or property interest which has been interfered with by the State, Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); and 2) whether the procedures attendant upon that deprivation were constitutionally sufficient, Hewitt v. Helms, 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), *receded from and rejected on separate grounds*, Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). See Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).

Thus, the first question that must be answered is whether there exists a liberty interest protected by the Due Process Clause. The United States Supreme Court has expressly denied entitlement to a protected liberty interest in parole. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.").  "Nevertheless, early release statutes can create a 'liberty interest protected by due process guarantees.'" Bermudez v. Duenas, 936 F.2d 1064, 1067 (9th Cir.1991) (per curiam), *quoting* Greenholtz, 442 U.S. at 12; Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).

1  Moreover, "[a] state may create a constitutionally protected liberty interest by establishing regulatory
2  measures that impose substantive limitations on the exercise of official discretion." Bermudez, 936
3  F.2d at 1067, citing Baumann v. Arizona Dep't of Corrections, 754 F.2d 841, 844 (9th Cir.1985).
4  However, no protected entitlement to release exists unless a state scheme includes a formula which
5  mandates release after the occurrence of specified events. Baumann, 754 F.2d at 844 (stating that the
6  unique "shall/unless" formula was decisive in Greenholtz). If there exists mandatory language in a
7  parole statute, then Petitioner has a protected liberty interest in parole release. Greenholtz, 442 U.S.
8  at 11-12. If, however, the state merely holds out the possibility of parole, then such a hope is not
9  protected by due process. Id.; Baumann, 754 F.2d at 844. Therefore, the Court must look to the
10 California parole statutes to determine whether the unique structure and language of those statutes
11 creates an entitlement to parole release or a presumption of expectation of parole release.

The relevant California statutory language is contained in Cal. Penal Code § 3041, which states, in relevant part:

> (a) One year prior to the inmate's minimum eligible parole release date a panel of two or more commissioners or deputy commissioners shall again meet with the inmate and *shall normally set a parole release date* as provided in Section 3041.5.
>
> (b) The panel or the board, sitting en banc, *shall set a release date unless it determines* that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting . . . .

Cal. Penal Code §§ 3041(a), 3041(b) (West 2000) (Emphasis added).

The language in Cal. Penal Code § 3041 provides for the possibility of parole.  A release date *shall* be set *unless* the BPT determines that the prisoner should not be released.  The word "shall" is not used in an absolute or mandatory sense. Sass, 376 F.Supp.2d at 981. It is qualified or modified in both subsections. Thus, parole is not automatic; it is discretionary.  Nevertheless, the Ninth Circuit Court of Appeals, without the assistance of a definitive California Supreme Court interpretation, found the language in § 3041 to be mandatory. See McQuillion v. Duncan, 306 F.3d 895 (9th Cir.2002).

In 2005, in In re Dannenberg, 34 Cal.4th 1061, 1087 (2005), the California Supreme Court provided a definitive interpretation of § 3041's structure and language. In Dannenberg, the California

1  Supreme Court held: 1) the language in § 3041 is not mandatory; 2) there is no right to parole in
2  California; 3) the Board of Prison Terms has extremely broad discretion and is not required to fix a
3  parole date; and 4) the statutory scheme of § 3041 indicates that § 3041(b) extinguishes any
4  expectancy an inmate may have in parole found in § 3041(a). Dannenberg, 34 Cal.4th at 1084, 1087-
5  88, 1097-98; Sass, 376 F.Supp.2d at 981.
6          This Court is therefore faced with conflicting interpretations from the Ninth Circuit and the
7  California Supreme Court.  Normally, the Court would defer to the Ninth Circuit's interpretation of
8  the state statute; however, circuit opinions are only persuasive authority. Clark, 331 F.3d at 1069;
9  Duhaime, 200 F.3d at 600-01. On the other hand, "[w]hen a state court has made its own definitive
10 determination as to the meaning of a state statute, federal courts give this finding great weight in
11 determining the natural effect of a statute, and if it is consistent with the statute's reasonable
12 interpretation, it will be deemed conclusive." Sass, 376 F.Supp.2d at 982, *citing* Gurley v. Rhoden,
13 421 U.S. 200, 208, 95 S.Ct. 1605, 44 L.Ed.2d 110 (1975); see also Oxborrow v. Eikenberry, 877
14 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989) (Federal courts are bound by state court
15 rulings on questions of state law). As noted by this Court in Sass, the general principle of deference
16 to state court interpretations is compelled by the Supreme Court's clearly established habeas corpus
17 jurisprudence. See, e.g., Greenholtz, 422 U.S. at 12, *citing* Bishop v. Wood, 426 U.S. 341, 345, 346
18 n.10, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (demonstrating deference to, and the need for, holdings
19 and interpretations of state supreme courts when establishing interests protected by due process);
20 Allen, 482 U.S. 369, 377 n.8, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987) (implying that a Montana
21 Supreme Court decision would have been instructive if there had been one on point).
22         Therefore, this Court will defer to the California Supreme Court's interpretation of § 3041 in
23 Dannenberg. The California Supreme Court answers the first question: the language of § 3041 is not
24 mandatory. Dannenberg, 34 Cal.4th at 1087-88. The absolute sense of the word "shall" is eviscerated
25 by the modifications ("shall *normally* set") and qualifications ("shall . . . *unless it determines*")
26 contained in the subsection. Cal. Penal Code §§ 3041(a), 3041(b) (West 2000) (Emphasis added).
27 Furthermore, "the lack of mandatory language in § 3041, especially when considered in light of 1)
28 California's long standing jurisprudence denying the existence of a parole right, 2) the statutory

scheme of § 3041, and 3) the broad discretion given to the BPT under the "noncapital murderers" exception to California's determinant sentencing law, precludes a legitimate expectation of parole release and, thus, does not give rise to an associated liberty interest under clearly established federal law." Sass, 376 F.Supp.2d at 982-983, *citing* Dannenberg, 34 Cal.4th at 1084, 1087-88, 1097-98. Therefore, as this Court held in Sass, "the unique structure and language of § 3041 precludes the finding of a federal liberty interest in parole." Sass, 376 F.Supp.2d at 983. Consequently, the state court determination that Petitioner's federal due process rights were not violated at his April 5, 2004, parole hearing was not contrary to or an unreasonable of clearly established federal law. 28 U.S.C. § 2254(d). In addition, because California's parole statutes do not give rise to a protected liberty interest, this Court is without jurisdiction to entertain Petitioner's claims.

     A.  Review in light of Supreme Court's Analysis in Sandin v. Conner

Although Petitioner does not claim a violation of his constitutional rights as determined in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), this Court is aware that Sandin presents another analysis for assessing whether prisoners have a protected liberty interest. In Sandin, the Supreme Court held that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." 515 U.S. at 483-84. To determine whether there is a state-created liberty interest, the Court must inquire whether the state action "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. As noted by this Court in Sass, however, Sandin "is by no means clearly established in the context of parole rights." Sass, 376 F.Supp.2d at 980. In Sandin, the Supreme Court determined whether a prisoner's rights were violated in the context of his conditions of confinement, not the possibility of his release from that confinement. Sandin, 515 U.S. at 480-81. In addition, Sandin did not overrule Greenholtz or Allen. Id. at 483 n.5. Accordingly, Greenholtz and Allen remain controlling law in the context of determining whether Petitioner has a liberty interest in parole. Indeed, the Supreme Court has cited Greenholtz and Allen approvingly following Sandin as examples of cases where state statutes have created liberty interests through the use of mandatory language. See I.N.S. v. St. Cyr, 533 U.S. 289, 345-46, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

In any case, Petitioner does not have a protected liberty interest even if Sandin were applied.

As correctly noted by Respondent, every California prisoner serving an indeterminate prison term is subject to the statutory maximum term unless the BPT fixes a shorter term. See Dannenberg, 34 Cal.4th at 1097-98. Therefore, the BPT's denial of parole cannot possibly impose an "atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Consequently, California's parole statutes do not give rise to a protected liberty interest under the Supreme Court's test in Sandin.

## RECOMMENDATION

Accordingly, the Court hereby RECOMMENDS that the petition for writ of habeas corpus be DISMISSED and the Clerk of Court be DIRECTED to enter judgment.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.

Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:     September 27, 2005            /s/ Lawrence J. O'Neill**
b9ed48                                     UNITED STATES MAGISTRATE JUDGE